MaddeN, Judge,
delivered the opinion of the court:
This is a test suit to determine the legal rights of 250 policemen of The Panama Canal to overtime compensation, night pay differential compensation, and compensation for holiday work. The plaintiff first named in the petition, Lewis W. Barker, is the only plaintiff as to whom the exact facts concerning his periods of employment, and the amount of his overtime, night, and holiday work have been found. This opinion will discuss the case as if the plaintiff Barker were the sole plaintiff.

Overtime Compensation Under the Joint Resolution of December 191$

The plaintiff has been a Panama Canal policeman since ■October 30, 1942. The Joint Resolution of December 22, 1942, 56 Stat. 1068, effective from December 1,1942, to April 30,1943, provided, in pertinent part:
That the joint resolution entitled “Joint resolution extending the period for which overtime rates of compensation may be paid under certain Acts”, approved July 3, 1942, is amended by striking out “November 30, 1942,” and inserting “April 30, 1943”: Provided, That the authorization contained herein to pay overtime compensation to certain groups of employees is hereby extended, effective December 1,1942, to all civilian employees in or under the United States Government, including Government-owned or controlled organizations (except employees in the legislative and judicial branches), and to those employees of the District of Colmnbia municipal government who occupy positions siifoject to the Classification Act of 1923^ as amended. [Italics added.]
The plaintiff says that the words “all civilian employees”, which we have italicized, include him, and therefore he is *276 entitled to overtime. The Government concedes that the plaintiff is a civilian employee of the United States but it says that the words, also italicized by us, further along in the Joint Resolution, saying in effect that employees of the District of Columbia who do not occupy positions subject to the Classification Act are not included within the coverage of the Joint Resolution, deprives the plaintiff of the benefits of the Joint Resolution. This apparent non sequitur requires elaboration. District of Columbia policemen are not subject to the Classification Act. They are, therefore, not covered by the Joint Resolution. The Government argues that the pay of Panama Canal policemen and District of Columbia policemen is legally intertwined so that the exclusion of the latter from the benefits of the Joint Resolution indirectly, but effectively, excluded the former. The Comptroller General of the United States so ruled, in his letter of February 4, 1943, a part of which is quoted in Finding 11.
Section 4 of the Panama Canal Act, approved August 24, 1912, 37 Stat. 561, provided:
Sec. 4. * * * All other persons necessary for the completion, care, management, maintenance, sanitation, government, operation, and protection of the Panama Canal and Canal Zone shall be appointed by the President, or by his authority, removable at his pleasure, and the compensation of such persons shall be fixed by the President, or by his authority, until such time as Congress may by laaw regulate the same, but salaries or compensation -fixed hereunder by the President shall in no instance exceed by more than twenty-poe per centum the salary or compensation paid for the same or similar services to persons employed by the Government in continental United States. * * * [Italics added.]
As amended by Section 3 of the Act of July 9, 1937, 50 Stat. 487, Section 81 of Title 2 of the Canal Zone Code contains the same provisions. The pay of Panama Canal policemen at the times here in question was that of District of Columbia policemen plus at times as little as 14 percent and at other times as much as 25 percent. The Government argues that if the Panama Canal policemen were given overtime pay in accordance with the Joint Resolution of December 22,1942, they would get more than 25 percent more than *277 District of Columbia policemen and the ceiling set in Section 4 of the Panama Canal Act would be violated. It argues that repeals by implication are not favored in the law. The plaintiff replies that there is no question here of repeal by implication. He says that the provision in the earlier legislation delegating to the Executive the power to fix Panama Canal salaries expressly states that the power shall last “until such time as Congress may by law regulate the same”, and that by the Joint Resolution of December 22,1942, Congress did “regulate the same” so far as overtime compensation was concerned.
We think the plaintiff is right. The plaintiff comes squarely within the language of the Joint Resolution. He is a civilian employee in the United States Government. To justify reading him out of the coverage of the legislation by the process of interpretation, the consequences of taking the words of the statute in their natural meaning would have to be much more incongruous than the result which we have here.

Overtime Compensation TJnder the War Overtime Pay Act of 19J¡3

The War Overtime Pay Act of 1943, 57 Stat. 75, was effective from May 1, 1943, to June 30, 1945. This statute, like the Joint Resolution of 1942, covered “all civilian employees” in or under the United States Government excepting, inter alia, employees of the District of Columbia not subject to the Classification Act. The plaintiff was not paid the overtime compensation provided by this statute and he sues for it. The arguments of the parties are the same as with regard to the joint resolution. We conclude that the plaintiff is entitled to the benefits of the statute.

Overtime Compensation Under the Federad Employees Pay Act of 191¡5

The Federal Employees Pay Act of 1945, 59 Stat. 295, became effective July 1, 1945. It provided for overtime compensation and the inclusions and exclusions from the coverage of this Act were the same, so far as here pertinent, as *278 those of the 1942 and 1943 legislation. By letter dated July 11,1945, quoted in Finding 28, the Comptroller General ruled that Panama Canal policemen were not covered by the Act. The arguments concerning the correctness of this ruling are the same as those already discussed, with the following exception: By the Act of June 30,1949 (63 Stat. 376), Congress authorized an increase of $330.00 a year in the salary of policemen of the District of Columbia effective as of the first day of the first pay period which began after June 30, 1948. By Act of October 25, 1949 (63 Stat. 887), the Governor of the Panama Canal Zone was “authorized to grant additional compensation to policemen * * * employed by The Panama Canal, corresponding to the additional compensation granted to similar employees of the District of Columbia by the Act * * * approved June 30,1949”. Pursuant to this authority, the salaries of Panama Canal policemen were increased $412.00 a year.
This 1949 legislation was the first express recognition by Congress of any connection between the salaries of the policemen of the District of Columbia and The Panama Canal. In House Report No. 1379, 81st Congress, 1st Session, concerning a bill (S. 2226) which eventually became law as the Act of October 25,1949, referred to above, it is said:
Policemen, firemen, and teachers employed by the Panama Canal receive salary benefits only at such times as policemen, firemen, and teachers in the District of Columbia are granted such awards. This has been the practice for years. Unless and until those persons, employed by the District of Columbia are awarded such benefits, no awards are made to those in the Panama Canal.
The report says that the purpose of the bill was to authorize the retroactive payment of the increases provided. But the report further quotes letters showing that the Secretary of the Army, the Governor of The Panama Canal, and the Civil Service Commission took exception to the statement in an earlier version of the bill that the salaries of Panama Canal policemen had been automatically increased by the Act of June 30, 1949, referred to above, increasing the salaries of District of Columbia policemen. The bill was *279 amended, apparently because of these protests, and as passed did not contain the criticized statement. The legislation and the proceedings in the committee, then, do not show that the committee thought, after the matter had been explained to it, that there was any legal connection whereby the salaries of Panama Canal policemen were automatically raised when those of District of Columbia policemen were raised. All that it shows is that the committee recognized that, without legislation, the salaries of The Panama Canal policemen could not be administratively raised unless those of the District of Columbia policemen were raised.
Our conclusion is, then, that the plaintiff, being included by the language of the Federal Employees Pay Act of 1945, is entitled to its benefits.

Method of Computing Overtime Compensation

We now consider the question of the method of computing the plaintiff’s overtime pay under the Joint Resolution of December 22,1942, and under the War Overtime Pay Act of 1943. No similar question arises as to the Federal Employees Pay Act of 1945, its provisions being clear on this point. The dispute in regard to the two earlier statutes is whether the plaintiff’s daily pay, on the basis of which his time and one-half for overtime should be computed, should be arrived at by dividing his annual pay by 260, the number of days one would work if he worked a five-day week without overtime, or by 360, approximately the whole number of days in the year. The 260 figure is considerably more advantageous to the plaintiff, since it makes the daily pay on which time and one-half is computed considerably higher than if the 360 figure is used.
In the case of Townsley v. United States, 101 C. Cls. 237, 263, affirmed, 323 U. S. 557, 573, it was decided that overtime under Section 23 of the Act of March 28, 1934, which Act contained no direction as to how it should be computed, should be computed on the basis of the 260 figure. In the case of Gray v. United States, 110 C. Cls. 661, 674, it was decided that the plaintiff in that case was entitled to be paid overtime on the basis of the 260 figure, there called “true *280 overtime”, under the Act of October 21, 1940, 54 Stat. 1205. The Act there in question covered monthly, per diem, hourly, and piece-work employees, and also some annual employees, and said at its end:
Provided, That in determining the overtime compensation of the foregoing per annum Government employees the pay for one day shall be considered to be one three-hundred-and-sixtieth of their respective annual salaries. [Italics added.]
We held that since Gray was not a per annum employee, the artificial statutory formula stated in the proviso did not apply to him.
In the instant case, the Joint Resolution of December 22, 1942, does not expressly state how overtime is to be computed. It refers to the Joint Resolution of July 3,1942, 56 Stat. 645, which extended the effective dates of the overtime provisions of the Act of June 28, 1940, 54 Stat. 676, the Act of October 21,1940, 54 Stat. 1205, and the Act of June 3,1941, 55 Stat. 241. The plaintiff urges that since we held in the Gray case, supra, that Gray, being a monthly employee, was entitled to true overtime under the Act of October 21, 1940, we should hold that the plaintiff is similarly entitled.
Panama Canal policemen, including the plaintiff, were not covered by any of the statutes authorizing overtime pay compensation prior to the Joint Resolution of December 22,1942. Their rights, then, derive from that Resolution. On December 26,1942, the President issued Executive Order No. 9289,7 F. R. 10897, C. F. R. Cum. Supp. Title 3, p. 1244. See Finding 5. In Section 2 (b) of the Order appears the following:
For the purpose of computing overtime compensation the pay for one hour shall be considered to be % of the employee’s pay for one day, and the pay for one day shall be considered to be %60 of the employee’s per an-num salary.
The plaintiff does not question the validity of the Executive order, but argues that since the plaintiff’s salary was a monthly salary, this language did not apply to him. We think that it did apply. The salaries of Panama Canal employees seem to have been, for some reason of administration or of history, fixed on a monthly basis, but the monthly sal *281 aries of such employees as policemen, firemen, and teachers were arrived at by dividing what would be a proper annual salary by twelve. We think that the President, in the Executive order, had regard to substance rather than form and that, in this context, the expression “per annum salary” was not meant to be limited to employees whose salary was technically fixed by the year. We can think of no reason why the President would have wanted to make so important a distinction between classes of employees whose salary situation was, substantially, identical. We conclude that the plaintiff’s overtime compensation, under the Joint Resolution of December 22,1942, should be computed on the basis of “statutory overtime”, that is, that the pay per day upon which it should be computed should be %6oth of twelve times the plaintiff’s monthly salary.
We call attention to the fact that, in the Gray case, supra, the parties made no reference to Executive Order No. 9289.

Method of Computing Overtime Compensation TJnder the War Overtime Pay Act of 191/3

The War Overtime Pay Act of 1948 provided in Section 2, inter alia, that overtime compensation should be “computed on the same basis as the overtime compensation which was authorized to be paid” under the Joint Resolution of December 22,1942. We therefore reach the same conclusion on this question that we reached above regarding the 1942 legislation.

Night Pay Differential Under Section SOI of the Federal Employees Pay Act of 191/5

The Federal Employees Pay Act of 1945, 59 Stat. 295, discussed above in another connection, provided in Section 801:
Sec. 301. Any officer or employee to whom this title applies who is assigned to a regularly scheduled tour of duty, any part of which falls between the hours of 6 o’clock postmeridian and 6 o’clock antemeridian, shall, for duty between such hours, excluding periods when he is in a leave status, be paid compensation at a rate 10 per centum in excess of his basic rate of compensation for duty between other hours: Provided, That such differential for night duty shall not be included in computing *282 any overtime compensation to which the-officer or employee may be entitled: And frovided further, That this section shall not operate to modify the provisions of the Act of July 1,1944 (Public Law Numbered 894, Seventy-eighth Congress), or any other law authorizing additional compensation for night work.
Panama Canal policemen, including the plaintiff, worked on a weekly rotation basis, the daylight shift being from 7 a. m. to 3 p. m., the swing shift from 3 to 11 p. m., and the graveyard shift from 11 p. m. to 7 a. m. During each three weeks a policeman would work each of these shifts, hence one-half of his hours would be worked between 6 p. m. and 6 a. m. The Government contends, with regard to Section 301 of the 1945 Act, as it did with regard to the overtime provisions of the Act, that the Act had no application at all to Panama Canal policemen. We have considered that argument above, and have concluded that the Act did apply to them. We therefore conclude that they are entitled to the night pay differential provided in the 1945 Act.
Section 301 of the 1945 Act was amended by Section 10 of the Federal Employees Pay Act of 1946, 60 Stat. 218, by inserting the words “including overtime” between the words “any part of which” and the words “falls between the hours”, near the beginning of the section. The policemen, including the plaintiff, were working a six-day, forty-eight-hour week, of which the sixth day was overtime. House Report No. 1834, 79th Cong., 2d Sess., relating to the 1946 amendment, says that the Comptroller General had ruled, 25 Comp. Gen. 62, 66, 25 Comp. Gen. 102, 109, that, under the 1945 Act an employee should not be paid the 10 percent night differential for the nights the employee worked overtime, that is, beyond his 40-hour week. The committee said:
However, the 10-percent night pay differential was intended to be payable for all regularly scheduled hours worked between 6 p. m. and 6 a. m. regardless of whether they occur during an overtime period or on a holiday.
ij: íj: Hí & #
The bill accordingly makes clarifying amendments to the Federal Employees Pay Act of 1945 so that such act, as amended, will accomplish the original intent.
*283 We think that the 1945 Act, before it was amended, said fairly plainly what the committee said in 1946 it was intended to mean. We have adverted in Townsley v. United States, 101 C. Cls. 237, 263 to the peril of concluding that, just because the legislature has clarified a statute to avoid for the future an unanticipated interpretation of it, the statute should be held to have meant something else before it was clarified. We therefore conclude that the plaintiff is entitled to the night pay differential for all of the night hours that he worked within his regularly scheduled tour of duty, from the effective date of the Federal Employees Pay Act of 1945.

Compensation for Holiday Work Under Section SOU of the Federal Employees Pay Act of 19I¡5

Section 302 of the Federal Employees Pay Act of 1945, 59 Stat. 298, says:
Sec. 302. Officers and employees to whom this title applies who are assigned to duty on a holiday designated by Federal statute or Executive order shall be compensated for such duty, excluding periods when they are in leave status, in lieu of their regular pay for that day, at the rate of one and one-half times the regular basic rate of compensation: Provided, That extra holiday compensation paid under this section shall not serve to reduce the amount of overtime compensation to which the employee may be entitled under this or any other Act during the administrative workweek in which the holiday occurs, but such extra holiday compensation shall not be considered to be a part of the basic compensation for the purpose of computing such overtime compensation. This section shall take effect upon the cessation of hostilities in the present war as proclaimed by the President, or at such earlier time as the Congress by concurrent resolution may prescribe. Prior to so becoming effective, it shall be effective with respect to any designated holiday only if the President has declared that such day shall not be generally a workday in the Federal service.
We have held above that the 1945 Act was applicable to Panama Canal policemen, including the plaintiff. The plain *284 tiff is, therefore, entitled to the extra holiday pay of half time for the holidays which he worked within the first 40 hours of his regularly scheduled 6-day, 48-hour workweek, during the period that Section 302 of the 1945 Act was in force. We are not asked to decide whether, if the holiday fell on his 6th or overtime day in any week, he could recover holiday pay for that day.
Effective July 1, 1946, Section 302 of the 1945 Act was amended by Section 11 of the Federal Employees Pay Act of 1946, 60 Stat. 218. This amendment, so far as here pertinent, changed the holiday premium from time and one-half to double time. The plaintiff may recover on that basis for the period beginning July 1, 1946.
Various payments were administratively made to Panama Canal policemen, including the plaintiff, in lieu and mitigation of their being denied the compensation which is claimed in this suit. The plaintiff offers to credit the Government with these payments, and they will be deducted from the amounts to which we have said above that he was entitled under the several statutes.
The plaintiff is entitled to recover. Entry of judgment will be suspended to await the filing of a stipulation by the parties showing the amount due, computed on the basis of the foregoing findings and opinion.
It is so ordered.
Howell, Judge; Whitaker, Judge; LittletoN, Judge; and JONES, Chief Judge, concur.
On a stipulation by the parties showing that under the decision of the court the amount due plaintiff was $3,737.09; it was ordered, July 10,1950, that judgment for $3,737.09 be entered for the plaintiff.