MaddeN, Judge,
delivered the opinion of the court:
The plaintiffs, 190 in number, have been, for all or a part of the time since July 1, 1953, employed as policemen in the Police Division of the Civil Affairs Bureau in the Panama Canal Zone Government, an agency of the United States. All but three of the plaintiffs are citizens of the United States. The three are citizens of the Eepublic of Panama, and are eligible, under the reciprocity provisions relating to our jurisdiction, to bring suit in this court. This is a suit for additional pay to which the plaintiffs claim to be entitled under the applicable statutes.
Section 81 of Title 2 of the Canal Zone Code, as amended by section 3 of the Act of July 9, 1937, 50 Stat. 487, and section 2 of the Act of September 26, 1950, 64 Stat. 1038, authorizes the President to appoint the necessary officials and employees in the Canal Zone, and to delegate that authority. The President delegated the authority to the Governor of the Canal Zone by section 1 of Executive Order No. 1888 of February 2, 1914. The Governor, by the same delegation, had authority to fix the pay of officials and employees.
*763 Prior to July 10,1950, the Governor had voluntarily made it a practice to set the basic rates of Canal Zone policemen with reference to those paid to Metropolitan policemen in the District of Columbia. The District of Columbia rates were set by statute, as amended from time to time. Section 2 of the Act of July 14, 1945, 59 Stat. 470, and in its turn, section 1 of the Act of June 30, 1949, 63 Stat. 376, provided that the Metropolitan policemen should receive, in addition to their basic pay, eight per cent of their basic pay in lieu of overtime pay and night pay differential. This eight per cent addition was also adopted by the Governor of the Canal Zone. The total pay so fixed was increased by a tropical differential of 25 per cent, which the Governor was authorized to award by section 81 of Title 2 of the Canal Zone Code, referred to above.
On July 10, 1950 this court decided the case of Lewis W. Barker, et al. v. United States, 117 C. Cls. 221. It held that the Federal Employees Pay Act of 1945, 59 Stat. 295, as amended, 60 Stat. 218, was applicable to Canal Zone policemen. Before that decision, Canal Zone policemen had worked a regular work week of 48 hours, but had received only the eight per cent lieu pay as compensation for the overtime and also in place of any night differential, if they worked at night. Under the Barker decision, they had to be paid at overtime rates for all hours in excess of 40 per week. But the Barker decision held that they were not entitled to both the 8 per cent lieu pay and overtime pay, and allowed the Government to set off the lieu pay in reduction of the judgment for the overtime pay.
After the Barker decision the Canal Zone policemen were put on a regular work week of 40 hours and were paid time and one-half for overtime, double time for holidays worked, and a 10 per cent differential for night work. The eight per cent lieu pay was eliminated.
The Barker decision had no application to the Metropolitan policemen. Prior to August 15, 1950, they had a six-day work week, nominally of 48 hours but in fact of 51 hours because they were required to report one-half hour before the beginning of each shift. They rotated on a weekly basis between the daylight shift, the swing shift, and the “grave *764 yard” or night shift. By the Act of August 15,1950,64 Stat. 447, the Metropolitan policemen were placed on what was called a five day, 40 hour, work week but was in fact a 42y2 hour week, because of the reporting requirement mentioned above. But the Act made the shorter work week effective only when money should be appropriated to hire the necessary additional policemen. Funds became available but, because of economic conditions, the necessary additional policemen could not be found and hired. The Act of March 27,1951 provided that the money appropriated to hire additional policemen could be used to pay policemen, at straight time rates, for work voluntarily performed on days other than their five day week work days. In fact, such extra pay was given only to police privates. In the course of time the necessary Metropolitan policemen were obtained and, generally speaking, it was not necessary for policemen to work more than a five-day week. However, on occasions, when the five-day week was suspended by the Commissioners of the District of Columbia because of an emergency, and there were no available funds to pay extra compensation, Metropolitan policemen were not paid for work in excess of the five-day week. The Act of August 4,1955 purported to give the policemen extra pay at straight time rates in cases of such emergencies, but there have been occasions when, because of lack of funds, they have not been paid for such emergencies, or for time spent in appearances in court or in other hearings.
The Act of October 24,1951, 65 Stat. 607, for the first time gave Metropolitan policemen double pay for holidays.
By the Act of October 25, 1951, 65 Stat. 636, which by its terms was made retroactive to July 1,1951, the pay of Metropolitan policemen was increased by 10 per cent. The increase applied to both basic pay and the eight per cent lieu pay. This statute also contained a provision relating to the pay of Canal Zone policemen, firemen and school teachers. as follows:
(c) In the exercise of the authority granted by section 81 of title 2 of the Canal Zone Code, as amended, the Governor of the Canal Zone is authorized and directed to grant additional compensation to policemen, firemen, ana school teachers employed by the Canal Zone Government, whenever additional compensation is granted *765 to employees of the District of Columbia employed in similar or comparable positions. The additional compensation for such Canal Zone employees shall be effective as of the date any additional compensation is granted to similar or comparable employees of the District of Columbia.
On November 13,1951, and in view of section 1 (c) of the Act of October 25, 1951, quoted above, the Governor of the Canal Zone increased the pay of Canal Zone policemen, and made the increase retroactive to July 1. The increase granted by the Governor was 10 per cent of the basic pay of the policemen. The basic pay being increased by 10 per cent, the overtime pay, night differential pay and holiday pay were automatically increased by 10 per cent, since those rates were computed from the basic pay rates. There had not been, since the Barker decision, any eight per cent lieu pay for the Canal Zone policemen, hence of course there was no percentage increase of such an item.
By the Act of June 20, 1953, 67 Stat. 72, Congress, in section 101 (a) made flat dollar increases rather than percentage increases in the pay of Metropolitan policemen. No mention was made in that Act of lieu pay at 8 per cent or any other figure. The representative of the Canal Zone policemen thereupon requested the Governor to put into effect in the Canal Zone the pay schedule set by section 101 (a) for Metropolitan policemen, plus the 25 per cent tropical differential. He said that section 1 (c) of the Act of October 25, 1951 required the Governor to grant the same increases to the Canal Zone policemen which Congress granted to the Metropolitan policemen, and that since there was no longer any eight per cent lieu item in the computation of the salaries of the Metropolitan policemen, their entire pay was basic pay, and the basic pay of the Canal Zone policemen had to be brought up to the dollar level of the new Metropolitan police salaries.
After the Barker decision, the basic pay of the Canal Zone policemen was eight per cent less than the basic pay, plus' the lieu pay, of the Metropolitan policemen. The reason was, of course, that the benefits of the Federal Employees Pay Act of 1945, acquired by the Barker decision, were supposed to be more than compensation for the elimination of *766 tbe lieu percentage. As we have seen, the 1951 increase granted by the Governor was only the same percentage increase in the basic pay which Congress had made in the basic pay of the Metropolitan policemen. The lieu item in the pay of the Metropolitan policemen was still not present in the Canal Zone pay schedule.
The plaintiffs’ position with regard to the 1953 congressional increase in the Metropolitan policemen’s pay was that the eight per cent difference between the two pay schedules which had existed since the Barker decision should be eliminated. The Governor, however, computed the percentage increase which had been given to the Metropolitan policemen, and gave the Canal Zone policemen the same percentage increase in their basic pay. That still left intact the eight per cent differential between the two pay schedules which had existed since the Barker decision.
The plaintiffs, in contending for the same basic pay rates as those in the new Metropolitan schedule, are asking for the entire difference between the 1951 basic Metropolitan pay, disregarding the additional eight per cent lieu pay then received by the Metropolitan police, and the 1953 pay all of which, the plaintiffs say, was basic, since the statute made no mention of lieu pay. The plaintiffs are, in effect, urging that, in 1953, they became entitled not only to the 1953 dollar increase in the total pay of the Metropolitan policemen, but that they get back the eight per cent lieu pay which they lost as a result of the Barker decision. Their representative, in a communication to the Governor, seemed to express regret at the Barker decision, which, of course, the representatives of the policemen had urged upon the court. He said that in fact the Canal Zone policemen, because they did not get much overtime work, and because the 10 per cent night differential did not amount to much, in fact received on the average less than four per cent in addition to their basic pay, while the Metropolitan policemen had received a flat eight per cent, and, under District of Columbia law, were also paid for many extra services.
A test claim under the 1953 Act was submitted to the Comptroller General. The Acting Comptroller General on November 18,1954 rejected the claim. He said that section *767 1(c) of the Act of October 25,1951, supra, which authorized and directed the Governor of the Canal Zone, in the exercise of the authority granted by section 81 of Title 2 of the Canal Zone Code, to grant additional compensation to policemen in the Canal Zone whenever additional compensation is granted to policemen of the District of Columbia “does not make it mandatory for the Governor to pay the same amount of increase.” His ruling apparently was that any increase at all, no matter how small in comparison to the increase granted to the Metropolitan policemen, would satisfy the requirement of the statute.
We think the reasoning of the Acting Comptroller General was wrong. It would, in effect, make the statute meaningless.
We conclude, however, that the pay rates set by the Governor complied with the requirements of section 1(c). After this court’s decision in the Barker case that the Federal Employees’ Pay Act of 1945, which was not applicable to the Metropolitan policemen, was applicable to the Canal Zone policemen, and that the eight per cent lieu pay which the Metropolitan policemen received, should no longer be paid to the Canal Zone policemen, comparison of the two sets of pay schedules could no longer be made in mere gross terms of dollars and cents. If it had been done so, the Canal Zone policemen would have eaten their cake, but still had it. It became necessary then, in order to make section 1(c) operate fairly, to make more refined calculations. It is true that, over the years, congressional and administrative action eroded the differences between the status of the Canal Zone policemen with their rights under the Federal Employees’ Pay Act of 1945, and that of the Metropolitan policemen. There were, however, still substantial differences, at least on paper, and the Governor did not exceed his authority when he took those differences into account. If it is desirable that the status, and the compensation, of the two sets of policemen should be made in all respects equivalent, that is a matter which should be dealt with by legislation.
There was a further increase in the pay of Metropolitan policemen by the Act of August 5,1955, 69 Stat. 530, amending sections 101(a) and 102(a) of the 1953 Act, supra. The *768 same contentions were made by the policemen, and the same methods of computations of increases were made by the Governor, as were made under the 1953 Act. Our conclusion is that the rates set by the Governor were lawful.
The plaintiffs’ petitions will be dismissed.
It is so ordered.
EdgertoN, Circuit Judge, sitting by designation; Lara-more, Judge; Whitaker, Judge, and JoNES, Chief Judge, concur.
FINDINGS OF FACT
The court, having considered the evidence, the report of Trial Commissioner, Roald A. Hogenson, and the briefs and argument of counsel, makes findings of fact as follows:
1. Pursuant to the agreement of the parties at pretrial conference, approved by the trial Commissioner, the trial of these cases is limited to the issues of law and fact relating to the right of the plaintiffs to recover, reserving the determination of the amounts of recovery and the amounts of offsets, if any, for further proceedings.
2. Plaintiffs are citizens of the United States with the exception of Juan A. Cazorla (34), Carlos Garcia O. (64) and Pedro Martin (113) who are citizens of the Republic of Panama.
By the terms of the National Constitution of Panama, citizens of the United States are accorded the right to prosecute claims against the Republic of Panama in its courts.
3. During the period from July 1, 1953, to date, each of the plaintiffs has been employed for all or a part of such period as a policeman in the Police Division of the Civil Affairs Bureau in the Canal Zone Government in one or more positions ranging from Policeman, Grade I, to Police Captain. Each plaintiff held the position of policeman by authority of the Governor of the Canal Zone, pursuant to the authority vested in the President of the United States by Section 81 of Title 2 of the Canal Zone Code, as amended by section 3 of the Act of July 9, 1937, 50 Stat. 487, and section 2 of the Act of September 26, 1950, 64 Stat. 1038, *769 and delegated to the Governor by section 1 of Executive Order No. 1888 of February 2,1914.
4. Prior to July 10,1950, tbe Governor of the Canal Zone, pursuant to the authority conferred on him by section 1 of Executive Order No. 1888 of February 2, 1914, had fixed and adjusted the basic rates of compensation for Canal Zone policemen with reference to the basic rates paid Metropolitan policemen of the District of Columbia serving in positions similar or comparable to those existing in the Canal Zone Police Division. During this period, Metropolitan Police of the District of Columbia received the basic annual rates fixed by section 1 of the Act of July 1, 1930, 46 Stat. 840, as amended by section 1 of the Act of July 14,1945, 59 Stat. 470, section 1 of the Act of July 5, 1946, 60 Stat. 480, and the Act of June 30, 1949, 63 Stat. 376. Pursuant to section 2 of the Act of July 14,1945, 59 Stat. 470, and section 1 of the Act of June 30,1949, 63 Stat. 376, the Metropolitan police also received, in lieu of overtime pay and night pay differential, additional compensation at the rate of eight percent of their annual basic rates. Accordingly, prior to the decision of this Court in the Barker case, hereinafter mentioned, Canal Zone policemen were compensated on the basis of the basic annual rates and the eight percent additional compensation established by these Acts, augumented by a tropical differential of 25 percent authorized by section 81 of Title 2 of the Canal Zone Code, as amended.
5. As of July 1, 1957, the Police Division of the Civil Affairs Bureau of the Canal Zone Government was organized into four major compartments or units, with (1) Headquarters, staffed by the Chief of Police, the Identification Officer and 4 clerks, supervising and directing: (2) The Penitentiary, staffed with 1 captain, 1 lieutenant, 9 policemen, and 15 guards; (3) the Balboa Police District, staffed with 1 captain, 2 lieutenants, 13 sergeants, 75 policemen, 13 guards, and 2 clerks, and by a detective detail comprised of 1 detective captain, 1 detective sergeant, and 4 detectives; and (4) the Cristobal Police District, staffed by 1 captain, 1 lieutenant, 12 sergeants, 44 policemen, 6 guards and 1 clerk, with an additional force at Gatun comprised of 1 sergeant, 5 policemen, 2 guards, and 6 matrons, and by a *770 detective detail comprised of 1 detective lieutenant, 1 detective sergeant, and 2 detectives.
In all, tbe authorized Police Division as of July 1, 1957, was comprised of 227 employees: 1 chief, 4 captains, 5 lieutenants, 28 sergeants, 140 policemen, 36 guards, 6 matrons and 7 clerks.
The above-outlined organization of the Police Division has remained the same throughout the period of the claims involved in these cases, with the authorized strength being somewhat less on July 1, 1957, than at previous times.
6. Prior to July 1950, Canal Zone policemen worked a regularly scheduled administrative workweek of 48 hours, consisting of 6 work days of 8 hours each. Subsequent to July 1950, Canal Zone policemen worked a regularly scheduled administrative workweek of 40 hours, consisting of 5 work days of 8 hours each.
Subsequent to July 1950 and at all times material to these claims, nearly all Canal Zone policemen worked on a weekly rotation basis as follows:
Daylight shift, 7 a. m. to 3 p. m_8 hours
Swing shift, 3 p. m. to 11 p. m_8 hours
Graveyard shift, 11 p. m. to 7 a. m-8 hours
However, approximately 25 Canal Zone policemen regularly worked the daylight shift only. Further, irregular shifts were worked on some occasions.
7. During the period of these claims, the general duties of Canal Zone policemen included walking a beat, radio car patrol, motorcycle patrol, detective duty, station house duty, penitentiary duty, and some assignments with the Paymaster of the Canal Zone. Motor launch patrol service is maintained but has been restricted in operation.
8. Following the decision of the United States Court of Claims in Lewis W. Barlcer, et al. v. United States, 117 C. Cls. 221, on July 10, 1950, establishing the applicability of the Federal Employees Pay Act of 1945, 59 Stat. 295, as amended, 60 Stat. 218, to Canal Zone policemen, Canal Zone administrative action changed the workweek of and the method and manner of compensating Canal Zone policemen. Subsequent to July 10, 1950, Canal Zone policemen worked a regularly scheduled workweek of 40 hours instead *771 of the previously established workweek of 48 hours, as previously described in finding 6. Further, Canal Zone policemen received overtime compensation at the rate of one and one-half times the basic hourly rate for all hours worked in excess of 40 hours per week, plus night pay differential of 10 percent of the basic hourly rate for work performed between the hours of 6:00 p. m. and 6:00 a. m., whereas prior to July 10, 1950, Canal Zone policemen received 8 percent of their basic annual rate in lieu of overtime pay and night pay differential. Prior to July 10,1950, Canal Zone policemen were not compensated for work performed on holidays, but subsequent to that date holiday work was compensated on the basis of double the basic hourly rate. Subsequent to July 10, 1950, the Governor of the Canal Zone in adjusting the rates of compensation of Canal Zone policemen with reference to the rates paid Metropolitan police of the District of Columbia, eliminated the 8 percent in lieu of overtime and night pay differential allocated to Metropolitan policemen, because it had been ruled by the Court of Claims that Canal Zone policemen were covered by the overtime and night differential pay provisions of the Federal Employees Pay Act of 1945, sufra. In computing the judgments to be awarded Canal Zone policemen pursuant to its decision in the Barher case, supra, the Court of Claims allowed the Government to set off against the amounts provided by the Federal Employees Pay Act of 1945, as amended, supra, the 8 percent which the Canal Zone Government had previously been paying Canal Zone policemen in lieu of overtime and night differential pay.
9. Prior to August 15, 1950, the Metropolitan policemen of the District of Columbia were employed on the basis of what was deemed administratively to be a 48-hour workweek consisting of 6 work days of 8 hours each. In practice, the policemen were required to report for duty one-half hour before the scheduled time for commencement of each shift, and consequently the weekly total was 51 hours of regularly scheduled employment. The majority of Metropolitan policemen worked on a weekly rotation basis as follows:
*772 Daylight shift, 7: 30 a. m. to 4: 00 p. m-8% hours
Swing shift, 3: 30 p. m. to 12: 00 p. m-8% hours
Graveyard shift, 11: 30 p. m. to 8: 00 a. m-8% hours
with, the first half-hour of each shift being devoted generally to attendance at the station of report.
As a result of the Act of August 15, 1950, 64 Stat. 447, Metropolitan policemen were placed on a five-day workweek which was deemed administratively to be a 40-hour workweek consisting of 5 work days of 8 hours each. The same weekly rotation of shifts was practiced. The policemen were still required to report one-half hour before the shift assignment commenced, and consequently were regularly employed a total of 42% hours per week. Further, Metropolitan policemen usually remain about 15 minutes after official termination of duty shifts to complete written or oral reports.
The Act of August 15, 1950, supra, provided that the five-day week for Metropolitan police was to take effect when funds were appropriated and made available for the additional personnel necessary to carry out the purposes of the act. In practice, this act did not shorten the workweek of Metropolitan policemen because of the inability of the Police Department to recruit personnel due to economic conditions, although sufficient funds were available to hire additional policemen. Metropolitan policemen continued to work 6 days per week.
In order to use the lapsing funds (available for new recruits) to compensate Metropolitan policemen for work to be performed in excess of a five-day workweek, legislation was sought. The Act of March 27, 1951, 65 Stat. 27, provided that additional compensation at straight-time rates was to be paid, from funds appropriated to fill vacancies in personnel strength, to Metropolitan policemen who voluntarily performed work on their non-work days in excess of the five-day work week provided by the Act of August 15, 1950, supra. The Act of March 27, 1951, supra, provided in part as follows:
* * * Each such officer or member shall be entitled to receive, in addition to his annual basic salary, compensation at the basic daily rate (one three-hundred- and-sixtieth of his annual basic salary) for each day *773 of duty voluntarily performed under this subsection, such additional compensation to be paid from current appropriations. * * *
In practice, this compensation for work performed on off-days was allowed only to police privates. In time the Department recruited up to full strength, and there came a period when the Department generally was not required to work policemen on their off-days. However, there have been occasions when Metropolitan policemen were required to perform overtime work with only partial compensation or without any compensation because of lack of or insufficiency of appropriated funds, for example, in the case of emergencies declared by the Commissioners of the District of Columbia, during which the five-day workweek was suspended without additional compensation being paid except as provided for under the Act of March 27, 1951, sufra. Finally, it was provided by the Act of August 4, 1955, 69 Stat. 491, being an amendment to the Act of March 27, 1951, supra, that the Metropolitan policemen were to be compensated at straight-time rates (1/260 of the annual basic rate for each day) for work performed on their days off when said days off were suspended because of an emergency declared by the Commissioners of the District of Columbia. Despite the foregoing statutes, the Metropolitan policemen have been required at times (because of insufficient appropriations) to work overtime without pay, or with only partial pay, and to make appearances in court and in other hearings related to the performance of their duties during off-duty hours without any additional compensation being paid.
10. The Act of October 24,1951,65 Stat. 607, granted Metropolitan policemen holiday pay for the first time, and provided in pertinent part, as follows:
That under regulations promulgated by the Commissioners of the District of Columbia each officer and member of the Metropolitan Police force and of the Fire Department of the District of Columbia when he may be required to work six or more hours on any holiday, shall be entitled to receive as compensation for such holiday work, in lieu of his regular pay for that day, an amount equal to twice his daily rate of basic *774 compensation: Provided, That no such officer or member shall be entitled to additional compensation for such holiday work for any day for which he is entitled to receive additional compensation under the provisions of Public Law 13, Eighty-second Congress, approved March 27,1951. * * *
The Act of March 27,1951, supra, is Public Law 13, Eighty-second Congress.
11. By the Act of October 25, 1951, 65 Stat. 636, which by its terms became effective retroactively to the first day of the first pay period following June 30,1951, it was provided that the annual compensation (including basic salary and additional compensation in lieu of overtime pay and night pay differential) of Metropolitan policemen was to be increased by 10 per centum (plus 8 per centum of such 10 per centum as additional compensation in lieu of overtime pay and night pay differential). It was also further provided in part as follows:
(c) In the exercise of the authority granted by section 81 of title 2 of the Canal Zone Code, as amended, the Governor of the Canal Zone is authorized and directed to grant additional compensation to policemen, firemen, and school teachers employed by the Canal Zone Government, whenever additional compensation is granted to employees of the District of Columbia employed in similar or comparable positions. The additional compensation for such Canal Zone employees shall be effective as of the date any additional compensation is granted to similar or comparable employees of the District of Columbia.
Prior to the effective date of this act, Metropolitan policemen had received certain basic annual rates, plus 8 percent of their basic annual rates in lieu of overtime pay and night pay differential, all as fixed by law.
12. Prior to the enactment of the Act of October 25,1951, supra, the Canal Zone Government consistently held to the position that it had no authority to grant retroactive pay increases without authorization by Congress, and the blanket authorization contained in the act was requested by the Canal Zone administration. Both prior to and after the enactment of this act, the Canal Zone Government held to the view that it was not bound to a mechanical adherence *775 to the salary rates established for Metropolitan policemen.
13. The provisions of the Act of October 25, 1951, supra, regarding pay increases for Metropolitan policemen were contained in section 1 (a) of the act, as follows:
* * * (a) the annual compensation (including basic salary and additional compensation in lieu of overtime pay and night pay differential) of each officer and member of the Metropolitan Police * * * of the District of Columbia, as increased by the Act entitled “An Act to provide for an adjustment of salaries of the Metropolitan Police * * * to conform with the increased cost of living in the District of Columbia,” approved July 14, 1945, as amended and by the Act entitled “An Act to increase the compensation of certain employees of the Municipal government of the District of Columbia and for other purposes,” approved June 30, 1949, shall be further increased by 10 per centum, (plus 8 per centum of such 10 per centum as additional compensation in lieu of overtime pay and night pay differential) except that in no case shall such compensation be increased by less than $300 per annum or by more than $800 per annum. * * *
14. The language of section 1 (a) of the Act of October 25, 1951, supra, created no particular problem in the computation of salary rates for Metropolitan policemen since the basic salary and the additional “in lieu” compensation (together described as “annual compensation” in the Act) were both paid to them irrespective of whether overtime or night work was actually performed. However, the language of this Act created a problem with respect to its application to Canal Zone policemen in that it made uncertain the percentage of the annual compensation that was basic salary under the new Metropolitan Police rate schedule.
In establishing the salary rates for Canal Zone policemen with reference to the rates established for Metropolitan policemen by the Act of October 25, 1951, supra, the Governor of the Canal Zone on November 13, 1951, effective July 1, 1951, increased the basic rates which were in effect prior to the passage of the Act of October 25, 1951, supra, by 10 percent, which rates excluded the 8 percent “in lieu” compensation. To the basic rates thus derived, there was added the 25 percent tropical differential.
*776 15. By letter dated April 16, 1952, the Governor of the Canal Zone submitted the question of the proper interpretation of section 1 (a) of the Act of October 25,1951, supra, to the Comptroller General, as follows:
Section 1 (a) of Public Law 207 — 82d Congress, “All Act to increase the salaries of the Metropolitan Police, the United States Park Police, the White House Police, members of the Fire Department of the District_ of Columbia, and employees of the Board of Education of the District of Columbia,” approved October 25,1951, further increased “the annual compensation (including basic salary and additional compensation in lieu of overtime pay and night pay differential)” of officers and members of the Metropolitan Police and the Fire Department of the District of Columbia, among others, “by 10 per centum (plus 8 per centum of such 10 per centum as additional compensation in lieu of overtime pay and night pay differential)” subject to a maximum and a minimum increase and to an overall per annum maximum rate. Section 1 (c) of the same Act authorized and directed the Governor of the Canal Zone, in the exercise of the authority granted the President by section 81 of title 2 of the Canal Zone Code, as amended, and delegated to the Governor by section 1 of Executive Order 1888 of February 2, 1914, to grant additional compensation to policemen and firemen employed by the Canal Zone Government,” * * * whenever additional compensation is granted to employees of the District of Columbia employed in similar or comparable positions.”
Canal Zone policemen’s and firemen’s basic rates of pay have for many years been based administratively upon District of Columbia rates of pay under the authority of section’81 of title 2 of the Canal Zone Code, as amended; section 1 (c) of the Act of October 25, 1951, in effect directs similar action to be taken . whenever District of Columbia rates are increased and authorizes such increases to be made in the Canal Zone retroactively to the effective date of the increase in District of Columbia rates.
Policemen and firemen employed by the Canal Zone Government are subject to the compensation provisions of the Federal Employees Pay Act of 1945, as amended (Lewis W. Barker et al vs. United States, Ct. of Cls. No. 48694, July 10, 1950), whereas officers and members of the Metropolitan Police and the Fire Department of the District of Columbia are expressly excepted there *777 from and receive instead 8 per centum of tbeir basic pay as compensation in lieu of overtime and night duty under section 2 of the Act of July 14, 1945, 59 Stat. 490, as amended. Such 8 per centum of basic pay, given as “in lieu” compensation to District of Columbia policemen and firemen is of course not for inclusion in the basic rates established for Canal Zone policemen and firemen.
The question presented for your decision is: What is the portion of the increases given under section 1 (a) of Public Law 207, 82d Congress which is properly to be considered as an increase in basic pay (or, conversely, the portion of such increases which is to be treated as “in lieu” compensation) in computing the amount of the increase which should be granted Canal Zone policemen and firemen under section 1(c) of that Act and under section 81 of title 2 of the Canal Zone Code, as amended? Failure to correctly apply said section 1 (c) would result either in overpayment or in payment less than authorized and directed by said section.
Basic per annum rates for District of Columbia policemen and firemen were established by Act of July 1, 1930, 46 Stat. 839. That Act contained no provisions for the payment of overtime or night duty compensation or for compensation in lieu thereof. Such basic salaries were increased by the Act of July 14,1945, 59 Stat. 470, in certain graduated, percentage amounts. Section 2 of said Act of July 14, 1945, provided that District of Columbia policemen and firemen should be paid additional compensation at the rate of 8 per centum of their annual basic salaries as increased by the Act in lieu of overtime pay and night pay differential. The basic rates as increased were further increased by Act of June 30, 1949, 63 Stat. 376 “by $330, plus 8 per centum of such $330 as additional compensation in lieu of overtime pay and night pay differential,” subject to an overall per annum maximum. Section 1 (a) of Public Law 207, 82d Congress, approved October 25, 1951, under which the question herewith presented arises, increased “the annual compensation (including basic salary and additional compensation in lieu of overtime pay and night Eay differential) [of District of Columbia policemen and remen as theretofore increased] * * * by 10 per centum (plus 8 per centum of such 10 per centum as additional compensation in lieu of overtime pay and night pay differential)”, subject to a minimum and a maximum increase and to a maximum overall per annum rate.
*778 Section 81 of title 2 of the Canal Zone Code, as amended, authorizes the President to fix the compensation of employees of the Canal Zone Government until such time as Congress may by law regulate the same, subject to the proviso that the compensation fixed “shall in no instance exceed by more than 25 per centum the salary or compensation paid for the same or similar services to persons employed by the Government in continental United States.” Under the provisions of section 1 of Executive Order 1888 of February 2,1914, the authority to fix such compensation has been delegated to the Governor of the Canal Zone. Pursuant to such dele-fated authority the Governor has consistently used the asic rates of compensation for District of Columbia policemen and firemen in the fixing of the compensation of Canal Zone policemen and firemen, adding to such basic rates a tropical differential not exceeding 25 per centum thereof to establish a Canal Zone basic rate. The tropical differential is not particularly pertinent in the consideration of this question except as it affects the maximum amount payable. Whenever increases were made in the basic pay of District of Columbia policemen and firemen, corresponding increases were made in the pay of Canal Zone policemen and firemen subject to the qualification that a full 25 per centum differential over District of Columbia basic rates was not given in all cases. Prior to the decision of the Barker case, cited above, the Federal Employees Pay Act of 1945, as amended, was considered inapplicable to Canal Zone policemen and firemen under Comptroller General’s decisions, and they were accordingly given the 8 percent “in lieu” compensation which was being given to District of Columbia policemen and firemen. Subsequent to that decision, it has of course been necessary to eliminate the 8 percent from the overall District of Columbia rates used in fixing Canal Zone rates since our employees were receiving overtime, night duty and holiday compensation under the Federal Employees Pay Act of 1945, as amended.
A schedule of the new rates of compensation as increased by Public Law 207, 82d Congress, received from the Metropolitan Police of the District of Columbia, indicates that they have made increases literally, as the language of section 1 (a) of the Act appears to require; namely, a 10 percent increase in the total annual compensation (including the statutory basic salary as theretofore increased and the 8 percent additional compensation in lieu of overtime pay and night pay difieren- *779 tial) plus an increase of 8 percent of such 10 percent increase as additional compensation in lieu of overtime pay and night pay differential. A breakdown showing District of Columbia policemen’s basic rates and rates for additional compensation in lieu of overtime and night duty work was requested of the Metropolitan Police, but they were unable to furnish such breakdown since it apparently is unnecessary for their purposes to distinguish between the two. See, for example, 25 C. G. 429, ruling that the “in lieu” compensation is a permanent addition to the salaries of the members of the Metropolitan Police Force and therefore constitutes a part of their pay for retirement purposes.
So far as concerns our present question, at least, this office considers that, although the 10 percent increase given by Public Law 207 was measured in terms of an increase in the annual compensation, including basic salary and “in lieu” compensation, such 10 percent increase, so measured, is to oe regarded as entirely an increase in basic compensation, and that the additional increase of “8 per centum of such 10 per centum” given by the Act is the only “in lieu” increase which is given by the Act. Under this view, the amount of “in lieu” compensation which is given District of Columbia policemen and firemen would continue to be an amount equal to 8 percent of the basic pay. The legislative history of Public Law 207 discloses no intention on the part of Congress to make any change in the percentage of basic pay which is to be given as “in lieu” compensation. On the contrary, the express provision in the Act for the additional increase of 8 per centum of such 10 percentum “as additional compensation in lieu of overtime pay and night pay differential” would seem to indicate that it was Congress’ intention to preserve the rate of “in lieu” compensation at 8 percent of the basic compensation. Under this view the expression of the increase in terms of 10 per centum of annual compensation (including basic and “in lieu” compensation) is regarded as merely the means or formula chosen for granting an increase in basic pay; such increases could have been made in fixed amounts, as was done in the 1949 increase.
The above view of the effect of section 1(a) of Public Law 207 is believed to be the correct one from a legal standpoint, and would also be far more desirable from an administrative standpoint, particularly because of its simplicity in administration. The “in lieu” compensation would continue at 8 percent of the basic rate *780 and District of Columbia overall per anum rates would merely be divided by 1.08 to establish the basic rates for use in establishing appropriate Canal Zone rates. However, in order to avoid the possibility of an overpayment if such construction should be ruled to be incorrect, this office has for the present established Canal Zone basic rates (less tropical differential) as follows: the former District of Columbia basic rates, that is, the rates in effect prior to the increases made, by Public Law 207 (which basic rates excluded the 8 percent “in lieu” compensation) were increased by 10 percent. This method would have the effect of changing the total amount of “in lieu” compensation to some fractional figure in excess of 8 percent of the basic compensation, which, as aforesaid, does not appear to have been Congress’ intention.
The difference between the two possible interpretations can perhaps be best illustrated by a specific example. Prior to the effective date of Public Law 207 the total annual compensation of a District of Columbia policeman, private, Class 8, was $3,848.21. Of this amount, $3,100,204 was basic compensation and $248,016 of such amount was the 8 percent “in lieu” compensation. Under the view which is considered to be the correct view, the basic rate of $3,100.24 would be increased by an amount equal to 10 percent of the annual compensation ($3348.21) or $333.82, resulting in a new basic rate of compensation of $3,435.02. For the present, however, as aforesaid, the basic rate has not been increased by that amount, but rather by the amount of $310.02, that figure being 10 percent of the former basic pay ($3,100.20), resulting in a new “basic rate” of $3,410.22.
Unless your decision is to the contrary, this office proposes to increase retroactively the Canal Zone basic rates under the authority of section 1(c) of Public Law 207, 82d Congress, in accordance with its above-stated view as to the correct interpretation to be placed upon section 1 (a) of said Public Law 207.
16. By an opinion, B-l09240, dated June 11, 1952, addressed to a successor Governor of the Canal Zone, the Comptroller General reviewed the question raised, and concluded as follows:
With respect to the scope of section 1 (c) of Public Law 207, it is noted that such statutory provision does not specify that the additional compensation to be granted Canal Zone policemen, firemen, and school *781 teachers whenever additional compensation is granted to employees of the District of Columbia in similar or comparable positions shall correspond, to the additional compensation allowed the District of Columbia employees; nor does it specifically limit the amount of additional compensation which may. be granted the Canal Zone employees. However, giving effect to legislation (such as the act of October 25, 1949, 63 Stat. 887, section 202 (21) of the Classification Act of 1949, 63 Stat. 956, and, finally, section 1 (c) here involved) enacted by the Congress in recent years — which cumulatively, at least, constitutes a legislative recognition of the relationship between the compensation of the District of Columbia and Canal Zone groups — it is concluded that the basic rates of compensation of Canal Zone policemen, firemen, and school teachers may not exceed by more than 25 percent the basic rates of compensation of employees of the District of Columbia employed in similar or comparable positions, as if they were “persons employed by the Government in continental United States” within the meaning of section 81 of title 2 of the Canal Zone Code, swpm. As the law now stands, I would not disturb the present practice of paying overtime compensation, night differential, and holiday extra compensation under the Federal Employees Pay Acts of 1945 and 1946 as a result of the Barker case and Office decision of April 23,1951, B-77193, supra.
Section 1 (a) of Public Law 207 increases by 10 percent the “annual compensation” of the affected District of Columbia employees, and, therefore, it must be taken as increasing the 8 percent additional compensation in lieu of overtime compensation and night differential provided by law as well as the basic annual compensation. I cannot agree that the increase is to be regarded as entirely an increase in basic compensation measured by a percentage of an amount including additional “in lieu” compensation. In that view, it would not be proper to include any part of the additional “in lieu” compensation when adjusting the basic compensation of Canal Zone policemen ana firemen as a result of Public Law 207. The different conclusion suggested in your predecessor’s letter would result in a pyramiding of additional compensation under the Federal Employees Pay Act of 1945 and 1946 for overtime and night services not justified by the law. CF, Bay Ridge Operating Company v. Aaron, 334 U. S. 446, 464—465.
Accordingly, it must be held that the method presently in use for determining the basic rates of compensation *782 of Canal Zone policemen and firemen, as set forth in the second paragraph quoted above from your predecessor’s letter, is the correct one.
The method of computation of rates of pay of Canal Zone policemen, approved by the Comptroller General, was that described by the Governor in the last two sentences of the ninth paragraph of the letter quoted in finding 15.
17. Public Law 74, 83rd Congress, 1st Session, being the Act of June 20, 1953, known as the District of Columbia Police and Firemen’s Salary Act of 1953, 67 Stat. 72, provided new salary rates effective July 1, 1953, for Metropolitan policemen in various grades of service, thereby increasing their salaries, by the terms of section 101, as follows:
Sec. 101. (a) Except as provided in subsections (b) or (c), the annual basic salaries of the officers and members of the Metropolitan Police force shall be at the rates set forth in the following table:
Chief of police_$12, 500
Deputy chiefs- 8,459
Inspectors_ 7, 753
Captains_ 6, 590
Lieutenants _ 6,009
Sergeants_ 5, 521
Corporals_ 5, 090
Private, class 4 (three or more years’ service)_ 4, 641
Private, class 3 (two or more years’ service)- 4, 378
Private, class 2 (one or more but less than two years’ service)_ 4,115
Private, class 1 (less than one year’s service)_ 3, 900
All original appointments of privates shall be made at the annual basic salary of $3,900 and the first year of service shall be probationary.
(b) The annual basic salary of a private of any class of the force shall be increased by—
(1) $1,200, while he is assigned to duty as detective sergeant;
(2) $465, while he is assigned to duty as a precinct detective,;
(3) $300, while he is assigned to duty as a station clerk;
(4) $270, while he is assigned to duty as a probational detective; or
(5) $390, while he is assigned to duty as a motorcycle officer.
*783 Paragraph (5) of this subsection shall apply to any officer below the grade of lieutenant.
(c) Subject to approval of the Commissioners, the annual basic salary of a private of the Metropolitan Police force shall be increased by an amount not to exceed $390 while he is assigned to duty as a technician.
Section 102 (a) made the following provision for the payment of in-grade pay increases for each five-year period of continuous service:
Section 102 (a) The annual basic salary of each officer and member of the Metropolitan Police force in a grade above that of private, class 3, except the Chief of Police, shall be increased by $120 at the beginning of the next pay period following each five-year period of continuous service completed in such grade, including service in such grade rendered prior to the effective date of this Act: Provided, That in computing service rendered prior to such date by any individual in the grade of private, only service in such grade in excess of three years shall be creditable in determining such increase or increases for any individual assigned to the grade of private, class 4, in the foregoing salary table.
This Act did not make any reference to the 8 percent in lieu of overtime and night differential which had appeared in various statutes subsequent to the Act of July 14,1945, 59 Stat. 470. Plaintiffs contend that the repeal provisions of section 404 of this Act, together with absence of any mention of the 8 percent “in lieu” compensation in this new salary act, eliminated the “in lieu” compensation as any part of the new salaries of Metropolitan policemen.
Section 405 (a) and (b) of this Act, which, in effect changed the basis of computation of the daily rate of pay from l/360th of the basic annual rate to l/260th of the basic annual rate, provided as follows:
Sec. 405 (a) For all pay computation purposes affecting employees covered, by this Act, basic per annum rates of compensation established by this Act shall be regarded as payment for employment during fifty-two basic administrative workweeks.
(b) Whenever for any such purpose it is necessary to convert a basic annual rate established by this Act to a basic biweekly, weekly, or daily rate, the following rules shall govern:
*784 (A) An annual rate shall be divided by fifty-two or twenty-six as the case may be, to derive a weekly or biweekly rate; or
(B) A weekly or biweekly rate shall be divided by five or ten, as the case may be, to derive a daily rate. All rates shall be computed to the nearest cent, counting one-half cent and over as a whole cent.
The effect of this provision was to increase to the extent funds were available the amount of compensation received by Metropolitan policemen for work voluntarily performed on their days off, and also their rates of holiday pay.
18. By letters dated June 26 and 27, 1953, the President of the Canal Zone Police Association, James L. Hatcher, as the representative of the plaintiffs, forwarded a copy of the District of Columbia Police and Firemen’s Salary Act of 1953, supra, to the Governor of the Canal Zone, together with a written request that the plaintiffs be given increased compensation effective July 1,1953, in accordance with rates shown on a pay table that was enclosed. These rates consisted of the new annual basic salaries for the Metropolitan police as set forth in Section 101 (a) of the Act, plus the tropical differential of 25 percent.
Plaintiffs asserted by their representative that section 404 of the Act had eliminated the 8 percent in lieu of overtime and night pay differential from the basic annual salaries of Metropolitan policemen, as fixed by section 101 thereof. In addition, the plaintiff’s representative requested that the overtime pay, night pay differential and holiday pay provisions of the Federal Employees Pay Act of 1945, as amended, supra, continue to be applied to these increased rates.
19. On June 26,1953, the Personnel Director of the Canal Zone Government provided the Governor with a detailed memorandum regarding establishment of new salary rates to be paid to Canal Zone policemen because of the Act of June 20,1953, supra. The Personnel Director recommended that the Canal Zone policemen be granted a percentage increase with reference to the salary rates established for Metropolitan policemen by the Act of June 20, 1953, supra, as compared with the salary rates established for Metropolitan policemen by the Act of October 25,1951, supra.
*785 The percentage of increase was computed in the following manner: The total annual compensation rate (basic salary-plus in lieu allowance for overtime and night pay differential) in effect for any particular position in the Metropolitan police on June 30, 1953, was subtracted from the new total annual compensation rate to be effective for such position on July 1, 1953, by sections 101 and 102 of the Act of June 20, 1953, supra. This difference was then divided by the total annual compensation rate (basic salary plus in lieu allowance for overtime and night pay differential) in effect for such position in the Metropolitan police on June 30, 1953, to arrive at a percentage of increase. This percentage of increase was then applied to the basic rate in effect on June 30,1953, for a similar position in the Canal Zone police, including the tropical differential of 25 percent, to arrive at the increase granted for that position. The basic rates in effect on June 30,1953, for Canal Zone policemen were those from which the “in lieu” allowance had been eliminated, as stated in previous findings.
The Personnel Director advised the Governor in pertinent parts of the memorandum, as follows:
4. Salaries of Canal Zone Government policemen and firemen have been based previously on that part of the District of Columbia rates which was exclusive of any overtime pay and night differential pay, * * * since it was held in the Court of Claims in the case of Lewis W. Barker, et al. v. United States, decided July 10, 1950, to the effect that Canal Zone Policemen were subject to the provisions of the Federal Employees Pay Act of 1945 for overtime and night pay. The new District of Columbia rates in Public Law 74, effective July 1,1953, are not broken down to indicate what part or percentage would be paid for overtime and night differential. The General Counsel, in reply of June 10, 1953, * * * to a question on this matter submitted by this Bureau, stated as follows:
“2. . . . But the fact remains that our employees get overtime and night pay differential under the 1945 Pay Act and the District of Columbia employees do not. This office would therefore retain the concept that the District of Columbia basic rates under the new law would cover something ours do not, as at present.
“3. However, since under the new law, if enacted, the 8 percentum * * * separate increment would be *786 obsolete as such, this office suggests the following for consideration as a simple and appropriate method of establishing our new rates to conform in principle to the new District of Columbia rates and of complying with the 1951 law requiring us to grant additional compensation whenever additional compensation is granted to District of Columbia employees; Determine for each rate of the new District of Columbia schedule the percentage increase it represents over the old rate. Apply this percentage directly to the corresponding Canal Zone rates (including the 25 percentum differential) to establish the new C. Z. schedule....
‡ ‡ $
“6. This office agrees with the Chief, Wage and Classification Division that it is desirable to propose legislation to exclude the Canal Zone police and firemen from the Federal Employees Pay Act of 1945. We will include such proposal in the legislative program for fiscal 1954, now being prepared for purposes of budget presentation. We will draft a bill and initiate necessary action. If such legislation is enacted the Canal Zone Government can use the District of Columbia schedule without the complications that presently exist.” ‡ ‡ ‡ ‡
6. The annual rates proposed for the Canal Zone police and fireman under Public Law 74 have been computed on the basis of applying the same percentage increase to the present rate for each grade level in the Canal Zone scale of rates, including the 25 percent tropical differential, as the percentage value of the dollar increase granted to each grade level in the District of Columbia scale. The use of this method is predicated on the opinion of the General Counsel that the new District of Columbia rates still contain an increment for overtime and night differential compensation because the former basic rates contained such an increment, and these former basic rates were per se increased under Public Law 74 dollarwise with no provision being made for additional compensation in lieu of overtime and night differential. Further, the amount of such increment is not now specified in the law, which does not permit the separation of the increment from the total basic rate. This method of computing the proposed Canal Zone rates is suggested by the General Counsel as the appropriate method to comply with the mandatory provisions of the 1951 law requiring us to grant additional compensation whenever additional com *787 pensation is granted to District of Columbia employees, and has the concurrence of the Comptroller.
The basic annual salary rates proposed by the Personnel Director for Canal Zone policemen, to be effective July 1, 1953, are set forth in schedules attached to his memorandum, which schedules are included in this finding as if fully set forth.
The new annual basic rates recommended by the Personnel Director were approved on July 2,1953, by the Governor of the Canal Zone, effective July 1,1953.
20. The percentages of increase and the new annual basic rates proposed by the Personnel Director and approved by the Governor, effective July 1, 1953, and those rates proposed by plaintiffs were as follows:

As part of the new salary schedules approved by the Governor for Canal Zone policemen, effective July 1, 1953, the personnel Director recommended and the Governor approved longevity increases to annual basic salaries in the sum of $150, computed on the $120 longevity increase provided for Metropolitan policemen by Section 102 (a) of the Act of June 20,1953, supra; plus the 25 percent tropical differential.
21. In a letter to the President of the Canal Zone Police Association, dated July 2, 1953, the Governor replied to plaintiffs’ letters dated July 26 and 27, 1953, and stated in part as follows:
With specific reference to the increase in base pay mentioned as point (a) above, we cannot agree that it would be unfair nor would it be proper to adopt the Metropolitan Police pay scale in toto because the over *788 time and. night differential provisions of the Federal Employees’ Pay Act of 1945 still applies to policemen and firemen employees of the Canal Zone Government. It is agreed that the new District of Columbia rates are not broken down to indicate any part or percentage to be paid for overtime and night differential. Public Law 74 makes no provision for night differential or overtime pay, thus continuing in effect the practice, of Public Law 207, 82nd Congress and earlier legislation which provided for an increment for overtime and night pay differential as part of the base pay. Thus, employees of the Canal Zone Government get overtime and night pay differential under the 1945 Pay Act and the District of Columbia employees do not.
22. On July 7,1953, the President of the Canal Zone Police Association met with the Governor of the Canal Zone to express plaintiffs’ dissatisfaction with the new rates of annual basic pay that had been approved by the Governor. Thereafter, on July 21,1953, the Association President forwarded a letter to the Governor on behalf of the Canal Zone policemen, in which it was contended that the increases in compensation granted them were less than the full amount of the increases in basic compensation granted by Congress to Metropolitan policemen, and thus the Governor had failed to comply with the requirements of section 1 (c) of the Act of October 25, 1951, sufra. In this letter, it was- further stated in part as follows:
* * * In the first place, to say. that Congress, by repealing the 8% in lieu of overtime and night pay differential, intended that the new annual basic rates for District of Columbia policemen included the old 8% payment for night work and occasional overtime, is purely conjectural. One would naturally suppose that by repealing the “in lieu” pay Congress indicated that it did not want to pay District of Columbia policemen any additional premium for night work or for occasional overtime. In this connection attention is directed to Sec. 403 of Public Law 74, which amends Sec. 4-904 (e) of the D. C. Code to pay 1/260 instead of 1/360 of the basic annual rate for work performed by. a D. C. policeman on his off days. It is just as logical to suppose that Congress intended to make up for the repeal of the “in lieu” provision by increasing the rate for work on off days as it is to suppose that Congress intended to include payment for night work and occasional overtime *789 in the new basic annual rate. It is therefore clear that the interpretation which resulted in this method of computing our current basic annual salary rates involved pure conjecture in order to deduct 8% from the increase in basic rates granted to D. C. police by Public Law 74.
Such conjecture should not be permitted to defeat the clear requirement of the Act of October 25, 1951 that Canal Zone policemen be granted additional compensation whenever additional compensation is granted to the District of Columbia employees.
Moreover, it would be unfair in computing the amount of the increase to Canal Zone policemen to reduce the amount of the full increase in basic annual compensation granted to D. C. policemen by taking into account the 8% “in lieu” pay which had previously been paid to the latter. Prior to Public Law 74, District of Columbia policemen who worked a 40-hour week received 8% m lieu of night pay and occasional overtime regardless of the extent to which they actually worked occasional overtime or at night. If they worked on their sixth day they also received additional compensation under Sec. 4-904 (e) of the D. C. Code. However, the Canal Zone policemen, who were on a 40-hour week, received the District of Columbia basic annual rate plus the 25% differential for Canal Zone service; received no increase, percentage or otherwise, in lieu of overtime; and received 10% of the basic daily rate only for those hours that were actually worked between 6 P. M. and 6 A. M. Since, on the average, the Canal Zone police worked only one-third to one-half their time at night, they received, on the average, less than 4% of their basic annual rate as compared to the 8% which was paid to the D. C. police. As the Canal Zone police did not receive the 8% “in lieu” pay proir to Public Law 74, it is therefore manifestly unfair to reduce their present increase by an assumed 8%. Such method of computing the present increase clearly violates the intent of Congress in the Act of October 25, 1951 that Canal Zone policemen should be granted additional compensation whenever additional compensation is also granted to the District of Columbia police.
23. By letter dated August 20, 1953, the Governor informed the President of the Canal Zone Police Association, in pertinent part as follows:
Following your recent visit at my office, I have reviewed carefully your letter of July 21, 1953, submitted at that time, in which you discuss the reasons why your *790 organization believes tbat our recent decision relative to the application of pay increases in Washington, D. C. policemen and firemen rates of pay is not entirely in accordance with the requirements of existing laws.
As a result of this review, I am convinced that the action taken in applying the same percentage increase to the rate for each grade level in the Canal Zone, scales of rates, including the 25% tropical differential, as was granted to each comparable grade level in the District of Columbia scales is wholly in accord with the applicable provisions of law and that it is all that may be given, legally or in fairness, in view of the fact that Canal Zone Policemen and Firemen are entitled to the benefits of night duty and overtime pay under the 1945 Pay Act, as amended, whereas the District of Columbia police and firemen are not so entitled.
Under the circumstances therefore, we do not believe it proper or necessary to reopen the matter at this time or to make any changes in the rates of pay effective July 1,1953.
24. On March 25, 1954, a test claim on behalf of plaintiff Edward V. Amason was submitted to the Comptroller General, requesting that in accordance with the provisions of section 1 (c) of the Act of October 25,1951, supra, the annual basic salaries of Canal Zone policemen should be based on the full rates prescribed by Congress for the Metropolitan policemen in section 101(a) of the District of Columbia Police and Firemen’s Salary Act of 1953, supra. Appropriate adjustments in overtime pay, night pay differential and holiday pay, based on the proposed higher basic annual salaries were also requested.
On November 18, 1954, the Acting Comptroller General rejected this claim, No. Z-1447490, by the following letter to the claimant:
Your claim for additional basic annual compensation, and additional overtime, night differential and holiday pay for services rendered as a Canal Zone policeman subsequent to July 1,1953, has been carefully examined and it is found that no part thereof may be allowed for the reasons hereinafter stated.
The file discloses your claim is made pursuant to Section 1 (c) of Public Law 207, 65 Stat. 636, effective July 1,1951, and arises out of the manner in which the Governor of the Canal Zone applied this section in granting *791 increases to Canal Zone policemen pursuant to Public Law 74, 67 Stat. 72, effective July 1,1953, entitled “District of Columbia Police and Firemen’s Salary Act of 1953.” You state that the increase for the position of Policeman, Grades 1 and 2, held by you during the period of your claim, was based on the difference between the new basic annual rates under Public Law 74 for District of Columbia police and their old basic annual rates, plus eight percent which District of Columbia police received in lieu of overtime and night differential pay prior to the effective date of Public Law 74. You contend the increase should be based on the full difference between the new and the old basic annual rates of the District of Columbia police, which would result in a greater increase in your basic annual salary as well as your overtime, night differential and holiday pay.
Section 81 of Title 2 of the Canal Zone Code, as amended, authorizes the President to fix the compensation of employees of the Canal Zone Government, subject to the provision that the amount of compensation shall not exceed by more than twenty-five percent the salary or compensation paid for the same or similar service to persons employed by the Government in continental United States. Under the provisions of Section 1 of Executive Order 1888, dated February 2,1914, the authority to fix rates of pay for Canal Zone employees was delegated to the Governor of the Canal Zone.
Section 1 (c) of Public Law 207, mentioned above, which authorized and directed the Governor of the Canal Zone, in the exercise of his administrative authority, to grant additional compensation to Canal Zone policemen whenever additional compensation is granted to employees of the District of Columbia employed in similar or comparable positions, does not make it mandatory for the Governor to pay the same amount of increase.
In view of the discretionary authority granted the Governor of the Canal Zone as stated above, there is no basis for this office to object to the amount of increase granted as a result of the enactment of Public Law 74.
I therefore certify that no balance is found due you from the United States.
25. By Act of August 5,1955, 69 Stat. 530, effective as of the first day of the first pay period which began after February 28, 1955, sections 101 and 102 (a) of the District of Columbia Police and Firemen’s Salary Act of 1953, supra, *792 were amended to provide increases in the salaries of Metropolitan policemen, as follows:
SEC. 101. (a) Except as provided in subsection (b) or (c), the annual basic salaries of the officers and members of the Metropolitan Police force shall be at the rates set forth in the following table:
Chief of police_$13,438
Deputy Chiefs_ 9,094
Inspectors_ 8, 335
Captains_ 7,085
Lieutenants ._- 6,460
Sergeants_ 5,936
Corporals_ 5,472
Private, class 4 (three or more year’s service)_ 4,990
Private, class 3 (two or more but less than three years’ service)_ 4,707
Private, class 2 (one or more but less than two years’ service)_ 4,424
Private, class 1 (less than one year’s service)__— 4,193
All original appointments of privates shall be made at the annual basic salary of $4,193 and the first year of service shall be probationary.
(b) The annual basic salary of a private of any class of the Metropolitan Police force shall be increased by—
(1) $1,290, while he is assigned to duty as detective sergeant;
(2) $500, while he is assigned to duty as precinct detective;
(3) $323, while he is assigned to duty as a station clerk;
(4) $291, while he is assigned to duty as a probational detective; or
(5) $420, while he is assigned to duty as a motorcycle officer.
Paragraph (5) of this subsection shall apply to any officer below the grade of lieutenant.
(c) Subject to the approval of the Commissioners, the annual basic salary of a private of the Metropolitan Police shall be increased by an amount not to exceed $420 while he is assigned to duty as a technician.
SEC. 2. Section 102 (a) of the District of Columbia Police and Firemen’s Salary Act of 1953 is amended by striking out “$120” and “$200” and inserting in lieu thereof “$129” and “$215” respectively.
26. The pertinent provisions of the Act of August 5,1955, sufra, were outlined by the Personnel Director of the Canal Zone Government in a memorandum to the Governor of the *793 Canal Zone dated August 10,1955. The Personnel Director recommended that the Governor approve a new table of annual basic salaries for the Canal Zone policemen, to be effective retroactively to March 13,1955, the first day of the first pay period which began after February 28,1955, which had been computed under the following formula: First, the basic annual rate for any particular position in the Metropolitan Police force fixed by section 101 (a) of the District of Columbia Police and Firemen’s Salary Act of 1953, supra, was subtracted from the new basic annual rate fixed for that position by the amendatory Act of August 5, 1955, supra. The difference thus obtained was then divided by the old basic annual rate fixed by section 101 (a) of the District of Columbia Police and Firemen’s Salary Act of 1953, supra, to arrive at a percentage of increase. The average percentage of increase for all positions was approximately 7.5%. The actual percentage of increase was then applied to the basic annual rate in effect on February 28, 1955 for a similar position on the Canal Zone police force to arrive at the increase granted for that position.
The basic annual salary rates proposed by the Personnel Director for Canal Zone policemen, to be effective March 13, 1955, the first day of the first pay period which began after February 28, 1955, are set forth in schedules attached to his memorandum, in evidence as defendant’s exhibit No. 6, which schedules are included in this finding as if fully set forth.
The new annual basic salaries recommended by the Personnel Director for Canal Zone policemen were approved by the Governor of the Canal Zone on August 11, 1955, to be effective March 13,1955.
27. As in the case of the District of Columbia Police and Firemen’s Salary Act of 1953, supra, the plaintiffs contend that they are entitled to receive the full amount of the new annual basic salaries prescribed by Congress for the Metropolitan police force in the Act of August 5, 1955, supra, plus the tropical differential of 25 percent, which in turn would increase the amount of their overtime pay, night pay differential and holiday pay. Together with a listing of the percentages of increase allowed for the various ranks of *794 Canal Zone policemen, a comparison of the rates actually-adopted by the Governor ofJhe Canal Zone and of the rates which the plaintiffs seek is asAollows:

28. Following the Barker decision, supra, the Canal Zone Government reduced the workweek of Canal Zone policemen from 48 to 40 hours, increased the police force, and reduced overtime employment as much as possible in order to keep expenditures within the limits of appropriated funds. Officers of the Canal Zone Police force above the lower grade of sergeant have not been regularly assigned to night duty.
During the period of the claims involved in these cases, overtime employment of Canal Zone policemen occurred because of various circumstances, such as the visit of a dignitary, a public transportation strike, escapes of convicts, the situation created when the president of a Central American country was brought to the Canal Zone for hospitalization following infliction of mortal wounds in an assassination attempt in his own country, other security details and official functions. In preparing budget estimates for the Canal Zone Police Division, an effort is made to make allowances for overtime pay. In some instances, compensatory time off has been allowed in lieu of overtime pay.
29. The schedules set forth in this finding, prepared and submitted by plaintiffs, are for general illustrative purposes only.
During the period from July 1, 1953, through June 20, 1957, plaintiff Edward V. Amason advanced from the grade of Private, Grade 1, to Private, Grade 4, Canal Zone Police Division. The following schedules set forth the periods of *795 service in each grade, and a comparison of the annual basic salary of each grade, the basic hourly rate, the 10 percent night pay differential hourly rate, and the holiday pay hourly rate received by him, with those to which he claims to be entitled:

For two years of the period covered by his claim, plaintiff Amason attended classes at a junior college in the Canal Zone. In accordance with the personnel policies of the Canal Zone Government, he was allowed to deviate from the regular rotating duty shifts worked by other Canal Zone policemen, and was allowed to work primarily the night shift with an occasional special shift assignment.
The Canal Zone Police force maintains a daily blotter in each police station which shows whether each policeman assigned to that station is in a duty status, on pass, or on sick or annual leave. On duty days the blotter shows the actual hours of duty, including overtime, performed by each policeman. This data is taken each day from the previous day’s blotter by the station timekeeper who compiles it on individual time cards for each policeman, which are forwarded to the payroll section of the Canal Zone Government for use in computing each policeman’s pay. A summary of this data is made from the time cards and entered by the payroll section on each policeman’s permanent payroll record.
*796 The following detailed breakdown of the plaintiff Ama-son’s claim was compiled from data on the police blotters of the station to which Amason was assigned, to the extent that it sets forth the total number of normal hours, night hours, holiday hours, and overtime hours worked during each calendar year, or applicable portion thereof, covered by this claim, with the hourly rates of pay used in the computations in the breakdown being those contained in the previous schedules in this findings:

July 1 to December 31, 1953

Pay Amason Claims He Should Have Received

Total Hours Worked (Exclusive of Holidays):
264 Hrs. at $2.34_ $617. 76
784 Hrs. at $2.47_ 1, 936. 48
Night Hours Worked:
173 Hrs. at $0.23_ 39. 79
648 Hrs. at $0.25_ 162. 00
Holiday Hours Worked:
8 Hrs. at $4.68___ 37. 44
24 Hrs. at $4.94_ 118. 56
Total_$2,912.03

Pay Amason Computes He Received

Total Hours Worked (Exclusive of Holidays):
264 Hrs. at $2.16_ $570. 24
784 Hrs. at $2.27_ 1, 779. 68
Night Hours Worked:
173 Hrs. at $0.22_ 38. 06
648 Hrs. at $0.23__149. 04
Holiday Hours Worked:
8 Hrs. at $4.32_ 34. 56
24 Hrs. at $4.54_ 108. 96
Total_ $2, 680. 54
Difference between amounts claimed and amounts received for work performed in 1953___ $231. 49

*797
1954

Pay Amason Claims He Should Have Received

Total Hours Worked (Exclusive of Holidays):
1,280 Hrs. at $2.47_$3, 161. 60
764 Hrs. at $2.63_ 2, 009. 32
Night Hours Worked:
880 Hrs. at $0.25_ 220. 00
674 Hrs. at $0.26_ 175. 24
Holiday Hours Worked:
40 Hrs. at $4.94_ 197. 60
28 Hrs. at $5.26_ 147. 28
Total- $5, 911. 04

Pay Amason Computes He Received

Total Hours Worked (Exclusive of Holidays):
1,280 Hrs. at $2.27_$2, 905. 60
764 Hrs. at $2.42_ 1, 848. 88
Night Hours Worked:
880 Hrs. at $0.23_ 202. 40
674 Hrs. at $0.24_ 161. 76
Holiday Hours Worked:
40 Hrs. at $4.54_ 181. 60
28 Hrs. at $4.84_ 135. 52
Total_ $5, 435. 76
Difference between amounts claimed and amounts received for work performed in 1954___ $475. 28

1955

Pay Amason Claims He Should Have Received

Total Hours Worked (Exclusive of Holidays):
392 Hrs. at $2.63_$1, 030. 96
856 Hrs. at $2.84_ 2,431. 04
784 Hrs. at $3.00_ 2, 352. 00
Night Hours Worked:
342 Hrs. at $0.26_ 88. 92
628 Hrs. at $0.28_ 175. 84
623 Hrs. at $0.30_ 186. 90
*798 Holiday Hours Worked:
16 Hrs. at $5.26. $84. 16
24 Hrs. at $5.68_ 136. 32
16 Hrs. at $6.00_ 96. 00
Overtime Hours Worked, 8 Hrs. at $3.93_ 31. 44
Total_ $6, 613. 58

Pay Amason Computes He Received

Total Hours Worked (Exclusive of Holidays):
392 Hrs. at $2.42_ $948. 64
856 Hrs. at $2.60_ 2, 225. 60
784 Hrs. at $2.76_ 2,163. 84
Night Hours Worked:
342 Hrs. at $0.24_ 82. 08
628 Hrs. at $0.26_ 163. 28
623 Hrs. at $0.28_ 174 44
Holiday Hours Worked:
16 Hrs. at $4.84_ 77. 44
24 Hrs. at $5.20_ 124. 80
16 Hrs. at $5.52___ 88. 32
Overtime Hours Worked, 8 Hrs. at $3.93_ 31. 44
Total. 6, 079. 88
Difference between amounts claimed and amounts received for work performed in 1955_ 533. 70

1956

Pay Amason Claims He Should Have Received

Total Hours Worked (Exclusive of Holidays):
2,072 Hrs. at $3.00..$6, 216. 00
Night Hours Worked:
1,017 Hrs. at $0.30__ 305.10
Holiday Hours Worked:
56 Hrs. at $6.00_ 336. 00
Overtime Hours Worked:
3 Hrs. at $3.93_ 11. 79
Total. $6, 868. 89

*799
Pay Amason Computes He Received

Total Hours Worked (Exclusive of Holidays):
2,072 Hrs. at $2.76.$5, 718. 72
Night Hours Worked:
1,017 Hrs. at $0.28_,. 248. 76
Holiday Hours Worked:
56 Hrs. at $5.52_ 309.12
Overtime Hours Worked:
3 Hrs. at $3.93__ 11. 79
Total.... 6, 324. 39
Difference between amounts claimed and amounts received for work performed in 1956_ 544. 50

January 1 to June 80, 1957

Pay Amason Claims He Should Have Received

Total Hours Worked (Exclusive of Holidays:
936 Hrs. at $3.00 — ..$2, 808. 00
Night Hours Worked:
402 Hrs. at $0.30_ 120. 60
Holiday Hours Worked:
32 Hrs. at $6.00_ 192. 00
Total_ $3,120. 60

Pay Amason Computes He Received

Total Hours Worked (Exclusive of Holidays):
936 Hrs. at $2.76_$2, 583. 36
Night Hours Worked:
402 Hrs. at $0.28_ 112. 56
Holiday Hours Worked:
32 Hrs. at $5.52__ 176. 64
Total_... 2, 872. 56
Difference between amounts claimed and amounts received for work performed in 1957_ 248. 04
Total claimed by Amason as of June 20, 1957_ 2, 033. 01
*800 30. The schedules set forth in this finding, prepared by the payroll division of the Canal Zone Government and submitted by defendant, are for general illustrative purposes only.
The following schedule is a statement of the compensation paid by the Canal Zone Government to plaintiff Edward V. Amason for services as Policeman, Grades 1 through 4, during the period July 1,1953 to June 15,1957:

With respect to the period prior to July 3, 1955, it was testified that it has not been practical to separate “Addi *801 tional Compensation” into overtime, night differential and holiday pay components because of the bookkeeping system maintained by the Canal Zone Government which resulted in the grouping together of these components. Subsequent to this date, the Canal Zone payrolls have been based on a different system which enabled these component parts to be separated. As a result, a more detailed statement of the compensation paid by the Canal Zone Government to Edward V. Amason for service as Policeman, Grade 4, during the period from July 8, 1955, to June 29, 1957, is as follows:

The foregoing schedules in this finding, as in the case of subsequent schedules designated as prepared by the payroll division, are not based upon police station blotters but upon the time cards and other records maintained in the payroll division of the Canal Zone Government.
*802 31. The following is a statement (prepared by the payroll division) of the basic hours worked by Canal Zone policemen and compensation paid them by the Canal Zone Government during the period June 21, 1953 to June 18, 1955, with the item “Additional Compensation” covering overtime, night differential and holiday pay:

A more detailed statement (prepared by the payroll division) of the compensation paid by the Canal Zone Government to the Canal Zone policeman during the period from July 3, 1955 to June 29,1957, is as follows:

CONCLUSION OU LAW
Upon the foregoing findings of fact, which are made a part of the judgment herein, the court concludes that as a matter of law, the plaintiffs are not entitled to recovér and their petitions are therefore dismissed.